Robert H. WATSON and Mable Ann Watson, f/d/b/a Western Bowl, Appellants,

v.

The NATIONAL SURETY CORPORATION OF CHICAGO, ILLINOIS, a/k/a Fireman's Fund Insurance Companies, Appellee.

No. 90–123.

Supreme Court of Iowa.

April 17, 1991.

David J.W. Proctor and Barbara Hering Whitaker of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

SCHULTZ, Justice.

This appeal presents issues arising from a condition [1] in a fire insurance policy that permitted the insurer to question the insureds under oath. The policy was issued by defendant, The National Surety Corporation of Chicago, Illinois, a/k/a Fireman's Fund Insurance Companies (Fireman's Fund), to plaintiffs-insureds, Robert H. Watson and Mable Ann Watson. The insurer denied plaintiffs' claims on the basis of their refusal to be questioned under oath concerning the fire. Plaintiffs then commenced this declaratory judgment action in law to determine their rights under the policy. This declaratory judgment action was submitted to the court for a ruling based on facts and exhibits which were agreed to by the parties. In its ruling, the trial court determined that plaintiffs' refusal to submit to questioning under oath was a material breach of a condition of coverage contained in the insurance policy and voided any coverage to which plaintiffs were entitled for their fire loss. We affirm.

Plaintiffs owned and operated Western Bowl, a bowling alley in Carroll, Iowa. Western Bowl was covered by a fire insurance policy issued to plaintiffs by Fireman's Fund. As a result of a fire on September 15, 1988, Western Bowl and its contents were destroyed without significant salvage. Fireman's Fund promptly investigated the loss. Within forty-eight hours after the fire, Robert H. Watson gave a taped interview to a Fireman's Fund

Jeffrey R. Minnich and Frank J. Comito of Neu, Minnich, Comito & Hall, P.C., Carroll, for appellants.

1. The condition provides in pertinent part:
    E. LOSS CONDITIONS
    The following conditions apply....
    ....
    3. *Duties In The Event Of Loss Or Damage*
    You must see that the following are done in the event of loss or damage to Covered Property:
    ....

    g. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.
    Iowa Code section 515.138 (1989) requires that this provision be contained in a fire insurance policy.

regional adjuster in a question-and-answer format. Nine days after the fire, Robert H. and Mable Watson both gave taped interviews to a member of Fireman's Fund's special investigative unit. No oath was administered during these interviews.

On October 31, plaintiffs submitted to Fireman's Fund a sworn proof of loss for $530,000 for losses allegedly sustained as a result of the fire. On December 2, Fireman's Fund received the investigator's written report which concluded that the fire was "of incendiary origin." Plaintiffs were then charged with second-degree arson in connection with the Western Bowl fire. On December 23, plaintiffs' attorney notified Fireman's Fund of plaintiffs' intention to file additional claims for loss of business opportunity and income.

Fireman's Fund initiated several written requests to question plaintiffs under oath pursuant to the terms of the insurance policy. The first request was sent on December 28. Another was sent on February 2, 1989. On February 10, plaintiffs refused Fireman's Fund's requests, contending that the earlier taped interviews given to Fireman's Fund satisfied their obligation under the policy. On February 16, Fireman's Fund informed plaintiffs that the unsworn interviews did not satisfy the policy requirement. It further warned that plaintiffs' continued refusal to submit to examinations under oath would be treated as a material breach of the insurance contract.

On April 24, Fireman's Fund repeated its request for examinations under oath; plaintiffs sent a letter on May 11 refusing this request. In this letter, plaintiffs offered affidavits as compliance with the policy requirement. Both affidavits stated that "I [plaintiff] have read the [transcribed] interview" and that "each and every response given in that interview is true and correct as I verily believe." Fireman's Fund responded by restating its position that it would not accept the taped preliminary unsworn interviews in lieu of statements under oath. On June 13, Fireman's Fund denied all of plaintiffs' claims regarding losses sustained as a result of the Western Bowl fire. Fireman's Fund had already paid over $356,000 on the fire loss to additional named insureds—equitable contract vendors and mortgagees—who Fireman's Fund believed had not breached the terms of the policy.

On appeal, plaintiffs contend that they substantially complied with the policy's questioning-under-oath requirement and have not breached the insurance contract. Fireman's Fund counters that plaintiffs have refused to be questioned under oath.

■ I. *Scope of review.* To determine our scope of review we must first resolve whether the action was tried in equity or law. Our task is simple because we review a case on appeal in the manner it was tried in the trial court. *Citizens Sav. Bank v. Sac City State Bank*, 315 N.W.2d 20, 24 (Iowa 1982). In this case, the action was filed in law and acknowledged as such by the trial court. Consequently, our review is for correction of errors at law. Iowa R.App.P. 4.

■ Certain principles are applicable in appellate review of a law case. If the trial court's findings of fact are supported by substantial evidence, we are bound by them. *Farmers Ins. Group v. Merryweather*, 214 N.W.2d 184, 186 (Iowa 1974). We are not bound by the trial court's determinations of law, however. *Id.* at 187.

II. *Breach of policy condition.* The fire insurance policy in this case provides that an insured may not bring an action against the insurer unless "[t]here has been full compliance with all the terms of this Coverage Part...." The parties agree that the coverage terms include the condition that the insured must submit to questions under oath. Plaintiffs contend that the trial court erred in denying them any benefits under the policy based on its finding that plaintiffs breached this policy condition. Before reviewing plaintiffs' claims of error, however, we must examine the placement of the burden of proof and the effect of a breach of a policy condition.

■ Even though we have not previously interpreted the questioning-under-oath provision of an insurance policy, we have examined related policy conditions. In other

cases in which bringing an action was conditioned on an insured's compliance with certain policy terms, such as giving notice of the loss or cooperating with the insurer, we ruled that these conditions are conditions precedent to an insured's recovery under the policy. *Bruns v. Hartford Accident & Indemn. Co.*, 407 N.W.2d 576, 579 (Iowa 1987); *Western Mut. Ins. Co. v. Baldwin*, 258 Iowa 460, 472, 137 N.W.2d 918, 925 (1965).

Other jurisdictions have similarly interpreted the examination-under-oath requirement of an insurance policy. The majority of courts have consistently held that failure to submit to questions under oath is a material breach of the policy terms and a condition precedent to an insured's recovery under the policy. *See, e.g., Pervis v. State Farm Fire & Cas. Co.*, 901 F.2d 944, 946 (11th Cir.1990); *West v. State Farm & Cas. Co.*, 868 F.2d 348, 349 (9th Cir.1989) (per curiam); *Stover v. Aetna Cas. & Sur. Co.*, 658 F.Supp. 156, 159 (S.D.W.Va.1987); *Kisting v. Westchester Fire Ins. Co.*, 290 F.Supp. 141, 147 (W.D.Wis.1968), *aff'd*, 416 F.2d 967 (7th Cir.1969); *Warrilow v. Superior Court*, 142 Ariz. 250, 253, 689 P.2d 193, 196 (Ct.App.1984); *Standard Mut. Ins. Co. v. Boyd*, 452 N.E.2d 1074, 1079 (Ind.Ct.App.1983); *Allison v. State Farm Fire & Cas. Co.*, 543 So.2d 661, 663 (Miss. 1989); *Azeem v. Colonial Assurance Co.*, 96 A.D.2d 123, 124, 468 N.Y.S.2d 248, 249 (1983), *aff'd*, 62 N.Y.2d 951, 479 N.Y.S.2d 216, 468 N.E.2d 54 (1984); *see also* 5A J. Appleman & J. Appleman, *Insurance Law & Practice* § 3549, at 549–50 (1970); 13A G. Couch, *Couch on Insurance 2d* § 49A:361, at 759 (M. Rhodes rev. ed. 1982); 44 Am.Jur.2d *Insurance* § 1364, at 290–91, § 1366, at 294 (1982). We likewise hold that submission to questions under oath is a condition precedent to an insured's recovery under an insurance policy.

■ We have placed the burden to prove compliance with a condition precedent of an insurance policy on the insured. *American Guar. & Liab. Ins. Co. v. Chandler Mfg. Co., Inc.*, 467 N.W.2d 226, 228 (Iowa 1991). However, proof of strict compliance is not required. Previously, we adopted a standard of substantial compliance with conditions precedent of an insurance policy. *Hoekstra v. Farm Bureau Mut. Ins. Co.*, 382 N.W.2d 100, 107 (Iowa 1986). We believe that *American Guarantee* and *Hoekstra* are controlling in this case even though other policy conditions were involved. Consequently, the insureds in this case have the burden of showing substantial compliance with the policy condition requiring them to answer questions under oath about the fire loss. We now must determine whether plaintiffs substantially complied with this policy condition.

III. *Substantial compliance.* The trial court ultimately found that plaintiffs did not substantially comply with the policy condition requiring the insureds to submit to questions under oath. As previously noted, our review is to determine whether the trial court's findings are supported by substantial evidence and whether the trial court erred in determining issues of law.

Plaintiffs urge that the taped interviews and their later verification of the truthfulness of these interviews constituted substantial compliance with the policy condition. The plain language of the policy condition requires questioning "under oath." We agree with the trial court's determination that plaintiffs did not substantially comply with the policy condition.

Other courts have expressed the same view. For instance, the Eleventh Circuit considered a case in which the plaintiff-insured gave at least three recorded statements to the insurer's representatives shortly after the fire. *Pervis*, 901 F.2d at 946. The court determined that the insurance "contract expressly required 'examinations under oath,' which [the several recorded statements] were not." *Id.* at 946 n. 3. Consequently, the court concluded that the insured had not satisfied his obligation to the insurer under the policy. *Id.* at 946–47. Similarly, the Ninth Circuit held that answers given in a preliminary interview shortly after a fire were not statements given under oath even though the interview ended with the insured stating that he had truthfully answered the

questions asked. *West*, 868 F.2d at 349, 351.

One case presents facts strikingly similar to this case. *Standard Mut. Ins. Co. v. Boyd*, 452 N.E.2d 1074 (Ind.Ct.App.1983). In *Boyd*, the insurer had a recorded conversation with the insured one week after the fire. *Id.* at 1075. Thereafter, the insured refused to submit to an examination under oath upon the insurer's request. *Id.* The court held that the insured's refusal was a material breach of the insurance policy which relieved the insurer of its contractual duty to pay the loss. *Id.* at 1079.

■ These cases reveal the unwillingness of other courts to allow preliminary interviews given shortly after a fire to be considered the type of examinations under oath required by an insurance policy. We agree with the conclusions reached in *Pervis*, *West*, and *Boyd* and believe that the same conclusion is appropriate in this case.

Admittedly, these cases do not contain facts of a later-administered oath offered by an insured to affirm an earlier unsworn interview. In this case, we believe that insureds' later attempt does not raise the status of the earlier interviews to questions under oath. Several reasons support our conclusion. The earlier interviews remain as unsworn statements at the time they were given. Also, there is no indication that the insurer intended these preliminary interviews to be a substitute for questions under oath. Finally, the language of the policy condition states that insureds may be questioned "at such times as may be reasonably required." The plural word "times" indicates that the insurer was not restricted to a single interview. All of these reasons indicate that an earlier unsworn interview, even though later verified, cannot constitute substantial compliance with the insurer's request for questioning under oath. Under this record, we will not disturb the trial court's determination on appeal.

■ IV. *Belated offer to comply.* In the trial court and on appeal, plaintiffs offered "to submit to the additional requested interrogation should the court find that [plaintiffs'] interpretation was in error." Other courts have addressed insureds' belated offers to submit to examinations under oath and held that such offers are too late to be considered as compliance with the insurance policy. *See, e.g., Pervis v. State Farm Fire & Cas. Co.*, 901 F.2d 944, 948 (11th Cir.1990) (insured's offer came too late to be considered); *Warrilow v. Superior Court*, 142 Ariz. 250, 255, 689 P.2d 193, 198 (Ct.App.1984) (insured's obligation of cooperation not met by promises of evidence to be supplied at some indefinite future time); *Azeem v. Colonial Assurance Co.*, 96 A.D.2d 123, 125, 468 N.Y.S.2d 248, 250 (1983) (insured's willingness to submit to examination under oath almost one and a half years after first scheduled examination and two years after fire does not satisfy contractual obligation of cooperation), *aff'd*, 62 N.Y.2d 951, 468 N.E.2d 54, 479 N.Y.S.2d 216 (1984).

The conclusions reached by these courts are reasonable. In order to determine whether to pay or deny an insured's claim, the insurer needs the evidence at the time of the investigation when facts are more easily recalled and before crucial evidence is destroyed or becomes otherwise unavailable.

V. *Conclusion.* We affirm the judgment entered by the trial court denying plaintiffs' claims for recovery of fire losses under the insurance policy held with Fireman's Fund.

AFFIRMED.